IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DANNY R. FUTREAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:10-cv-00304 |
| v. | ) | Judge Wiseman/ Knowles |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI") benefits, as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 11. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 12. Plaintiff has filed a Reply to Defendant's Response. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED, and that this action be REMANDED for a determination regarding Plaintiff's credibility.

## I. INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") benefits on

1

September 22, 2005, alleging that he had been disabled since July 24, 2001,[1] due to back problems, gout, breathing problems, memory loss, and depression. *See, e.g.,* Docket No. 9, Attachment ("TR"), pp. 64, 67, 102. Plaintiff's application was denied both initially (TR 63, 82-84) and upon reconsideration (TR 66, 87-88). Plaintiff subsequently requested (TR 90) and received (TR 52-57) a hearing. Plaintiff's hearing was conducted on February 5, 2008,[2] by Administrative Law Judge ("ALJ") Ronald E. Miller. TR 18-50. Plaintiff and Vocational Expert, Michelle McBroom, appeared and testified. *Id.*

On June 17, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-17. Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since September 22, 2005 (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has a severe combination of impairments that includes degenerative disc disease with the history of an L4,5 laminectomy, chronic obstructive pulmonary disease, an adjustment disorder with depressed mood, and the history of seizure disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] During his hearing, Plaintiff amended his alleged onset date to September 22, 2005. TR 29.

[2] Although Plaintiff's Notice of Hearing states that Plaintiff's hearing would be conducted on February 2, 2008 (TR 52), the Hearing Transcript states that the Hearing was held on February 5, 2008 (TR 18). This discrepancy is, however, immaterial to the issues before the Court.

4. After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform a range of work, with occasional lifting up to 15 pounds and frequent lifting of 5-10 pounds, walking/standing 4-6 hours during an 8-hour workday, and sitting for 6 or more hours during an 8-hour workday, no climbing of ropes, ladders, or scaffolds, and no working at unprotected heights, being around moving machinery, or driving automotive equipment, with the mental ability to remember locations and work-like procedures and to understand and remember simple and low-level detailed tasks, some but not substantial difficulty in maintaining concentration, in performing daily activities, and in completing a normal work week with acceptable performance/productivity, the ability to sustain an ordinary work routine around others and to make acceptable simple work-related decisions, the ability to appropriately interact with the general public, supervisors, and peers in the work place without significant disruptive distractions or confrontations, the ability to maintain basic standards of neatness and cleanliness, an awareness of and an appropriate response to changes and hazards in the work place, the ability to travel to unfamiliar places, and some but not substantial difficulty in setting and pursuing realistic work goals in the work setting.

5. The claimant does not have any vocationally relevant past work experience (20 CFR 416.965).

6. The claimant was 43 years old when he filed his application in September 2005 and is currently 46 years old, a younger individual (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The claimant does not possess any relevant job skills (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

> 10. The claimant has not been under a disability, as defined under the Social Security Act, since September 22, 2005, the amended alleged onset date (20 CFR 416.920(g)).

TR 12-17.

On June 24, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 5. On March 4, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

4

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful

5

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
> 
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
> 
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
> 
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
> 
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that that ALJ failed to, (1) provide sufficient justification for discounting the opinion of Plaintiff's treating physicians, Dr. Corazon Cardeno, and, to a lesser extent, Dr. Suzette Kelly; and, (2) properly evaluate Plaintiff's credibility. Docket No. 11. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. The ALJ Failed to Provide Sufficient Justification for Discounting the Opinion of Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ erred in not according controlling weight to Dr. Cardeno's opinions because Dr. Cardeno was Plaintiff's treating physician and Dr. Cardeno's opinions were supported by clinical findings and not inconsistent with other evidence of record. Docket No. 11. Plaintiff also argues that the ALJ erred in not specifically explaining why he discounted Dr. Cardeno's opinions. *Id.* Plaintiff additionally argues that the ALJ's according greater weight to Dr. Grafton Thurman's opinion was erroneous, because Dr. Thurman contradicted himself throughout his records and did not have the "wealth of records to review that Dr. Cardeno had." *Id.* Plaintiff maintains that Dr. Cardeno's opinion in her Treating Source Statement ("TSS"), which found that Plaintiff could not even perform sedentary work, was well-

8

supported and consistent with other substantial evidence in the record, including the medical records of Dr. Suzette Kelly.[4]  *Id.*

Defendant counters that the ALJ was correct in finding that Dr. Cardeno's opinions in her TSS were not supported by the record, and that the ALJ properly concluded that consultative physician Dr. Thurman's evaluation of Plaintiff was "more realistic."  Docket No. 12.  Defendant additionally avers that the ALJ was also correct in discrediting Dr. Kelly's opinion, which conflicted with evidence in the record.  *Id.*

In Plaintiff's Reply, Plaintiff reasserts that the ALJ's conclusion that Dr. Cardeno's opinion was unsupported by medical evidence was incorrect, because the ALJ's opinion is not supported by the hearing transcript and is contrary to Social Security procedural rules and Sixth Circuit case law.[5]  Docket No. 13.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to

---

[4] Plaintiff characterizes Dr. Kelly as the "successor as treating physician for [Plaintiff]."  Docket No. 11.  The opinions of Drs. Cardeno and Kelly are consistent with each other in finding that Plaintiff cannot perform sedentary work.

[5] Plaintiff contends that 20 C.F.R. 404.1527(d)(2) requires that the ALJ must address specifically why he rejected the opinion of Plaintiff's treating physician.  Docket No. 13.  Plaintiff argues that, in determining that Dr. Cardeno's opinion was not credible, the ALJ failed to address x-ray results, MRI results, office visits Plaintiff had with Dr. Cardeno from 2002 to 2005, or Plaintiff's testimony during the hearing.  *Id.*

9

> the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Plaintiff began seeing Dr. Cardeno in June 2002 (TR 202), and continued to see Dr. Cardeno periodically until at least April 11, 2006 (TR 260-271). Accordingly, Dr. Cardeno could be considered Plaintiff's treating physician, and her opinion could be accorded controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."

In October 2005, Dr. Cardeno completed a TSS on behalf of Plaintiff. In that TSS, Dr. Cardeno found that Plaintiff could sit less than one hour at a time; stand/walk less than one hour at a time; sit for a total of less than two hours in an eight-hour workday; stand/walk a total of less than one hour in an eight-hour workday; could not use his hands for "fine manipulation"; could not use his feet for repetitive movements in operating foot controls; could occasionally lift/carry zero to four pounds, but never anything more than twenty pounds; could never bend or squat; and could rarely crawl or climb. TR 194-195. Dr. Cardeno also noted that Plaintiff's pain affected his daily activities in a "moderately severe" way. TR 195. The ALJ noted that the restrictions opined by Dr. Cardeno in her TSS would preclude Plaintiff from performing even sedentary work on a sustained basis. TR 13.

In rejecting Dr. Cardeno's opinion, the ALJ explained that, (1) Plaintiff "had visited Dr. Cardeno only infrequently; with the evidence failing to document the type of doctor-patient relationship outlined in 20 C.F.R. 416.927(d)(2)(i) and (ii)"; (2) the objective evidence did not support Dr. Cardeno's "extremely limited" TSS; and (3) Dr. Cardeno "provided no rationale in support of the work limitations she outlined in her opinion." TR 13. The ALJ added: "Dr.

Cardeno had offered a similar opinion in support of a previous disability application filed by [Plaintiff Futreal], which had been unfounded, also; inferring an overwillingness [*sic*] to support [Plaintiff Futreal's] pursuit of financial benefits for his alleged disability." *Id.*

The ALJ also noted, *inter alia*, that Plaintiff had "not visited physicians frequently complaining of back pain"; that Plaintiff had not taken any prescription pain medication on an ongoing basis; and that Plaintiff's bone density testing showed that he did not have osteoporosis, that he had normal bone density in his back, and that he had only mild osteopenia of the femoral necks. *Id.* Additionally, the ALJ noted that Plaintiff had undergone an L4, 5 laminectomy in August 1996, but had not required any additional back surgery. *Id.*

Dr. Cardeno's successor, Dr. Kelly, also completed a TSS that contained limitations that would preclude Plaintiff from being able to perform even sedentary work. TR 287-288. In that TSS, Dr. Kelly opined that Plaintiff could lift four to nine pounds; could walk/stand only one hour total in a workday; and could sit only one hour total in a workday. TR 14, 287-288.

Like the TSS of Dr. Cardeno, the ALJ found the TSS of Dr. Kelly to be unsupported by the overall evidence. TR 15. Specifically, the ALJ noted:

> Dr. Kelly alleged that the claimant cannot work due to his seizure disorder, chronic obstructive pulmonary disease, liver disease, and degenerative disc disease. In contrast, the claimant's seizures are controlled when he takes his medication as prescribed. He obtained good values upon pulmonary function testing. His pulmonary status has not prompted him to follow the prescribed medical advice to stop smoking. He has not been hospitalized or experienced severe symptomatology of liver disease since filling out his current application. His degenerative disc disease has not caused nerve root compression, requiring any surgery, and the claimant has gone without taking medication for his alleged pain.

TR 15.

To further demonstrate that the opinions of Drs. Cardeno and Kelly were inconsistent with the record, the ALJ discussed Plaintiff's testimony and reported activities. TR 14. Specifically, the ALJ noted that Plaintiff had reported washing dishes, dusting, cooking several times per week, going grocery shopping, watching television, feeding the dogs, sweeping the floor, shopping at a used clothes store, building model cars, and attending events such as the taping of "Deal or No Deal" in Nashville. *Id.*, *see also*, *e.g.,* TR 131-138. The ALJ also noted, *inter alia*, that Plaintiff testified that he did not take any pain medication; that he would sit or lie down at times to "deal with" the pain; that he was limited to lifting fifteen pounds; and that his seizures were controlled with the use of medication. TR 15.

Consultative examiner, Dr. Grafton, completed a Medical Source Statement ("MSS") relating to Plaintiff. TR 205-215. Dr. Grafton's MSS indicated that Plaintiff retained the residual functional capacity to perform at least sedentary work, with lifting of up to ten pounds, two hours of walking/standing during an eight-hour workday, and six hours of sitting during an eight-hour workday. *Id.*

Regarding Dr. Grafton's opinion, the ALJ noted:

> The consultative physician who examined the claimant after he filed his current application indicates that [Plaintiff] retains the physical capacity to engage in substantial gainful activity. At his examination, the claimant moved and walked about in a stiff manner, but had a normal gait. He displayed a reduced range of motion of the back, and limited straight leg raising bilaterally. However, he had no muscle spasms indicative of pain or evidence of radiculopathy. An x-ray study showed some disc space narrowing at L5,S1. The claimant confirmed that he used no medication for his alleged pain. He reported that he had bronchitis, but he continued his long-term habit of smoking up to 2 and ½ packs of cigarettes a day. On pulmonary function studies he obtained good results such as one-second forced expiratory volume value of 4.05, being measured as 64 inches in height. The claimant

13

related that he had a history of seizure disorder, but indicated that
he does not experience seizures when he takes his anticonvulsant
medication.

TR 13, 205-215.

As has been noted, the ALJ rejected the opinions of Drs. Cardeno and Kelly because they conflicted with, and were not supported by, the evidence of record. TR 13-15, 17. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When there are conflicting opinions, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2).

Contrary to Plaintiff's assertions, the ALJ clearly articulated his reasons for discounting the opinions of Drs. Cardeno and Kelly. In addition to that which was discussed above, the ALJ summarized as follows:

> Diagnostic tests have shown that the claimant has some
> degenerative disc disease at L5, S1, without nerve root
> compression. He has related that he has not used any medication
> on an ongoing basis to relieve his alleged pain. He has not
> required any further back surgery since 1996. He said that sitting
> down or lying down relieves his discomfort. Pulmonary function
> testing has shown that he retains good respiratory function. Some
> of the physicians of record have reported that the claimant retains
> the physical and mental capacity to engage in substantial gainful
> activity. The claimant has acknowledged that he generally does
> not experience any seizures when he takes his prescribed
> medication. (i.e., Exhibits B6F and B14F). On the occasion when
> he was seen, post-seizure, he has acknowledged not taking the
> anticonvulsant medication as prescribed. (i.e. Exhibit B16F). . . .

> The claimant has failed to follow the repeated prescribed medical
> advice to stop drinking and stop smoking. . . .

TR 15.

The ALJ discussed the evidence of record and reached a reasoned decision. He accepted the opinions that he found to be consistent with, and supported by, the record as a whole. The ALJ complied with the Regulations, and Plaintiff's argument fails.

**2. The ALJ Failed to Properly Evaluate Plaintiff's Credibility**

Plaintiff contends that the ALJ did not make a finding concerning Plaintiff's credibility, and that ALJ's failure to do so constitutes reversible error. Docket No. 11. Defendant counters that the ALJ, throughout his decision, described why the medical evidence undermined Plaintiff's complaints, thereby sufficiently addressing Plaintiff's credibility. Docket No. 12. Plaintiff, in his reply, essentially reiterates his assertion that the lack of a credibility determination constitutes reversible error. Docket No. 13.

While Defendant is correct that the ALJ thoroughly discussed the evidence of record, Defendant is incorrect in the assertion that a thorough discussion of the evidence sufficiently permits the inference of a credibility determination.

Social Security Ruling 96-7p requires an ALJ to explain credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *See, e.g., Mendoza v. Astrue,* 2009 WL 5062103 at *6 (S.D. Ohio 2009).

The ALJ in the case at bar did not expressly make a credibility determination. While the ALJ's discussion of the evidence implies that he felt Plaintiff was not entirely credible because

there were some conflicts between Plaintiff's contentions and the evidence of record, this implication is insufficiently "specific to make clear to the individual and to [this Court] the weight the adjudicator gave to the individual's statements and the reasons for that weight." The ALJ's failure to make any specific findings regarding Plaintiff's credibility presents an insuperable barrier to the Court's determining as a matter of law that the ALJ's decision was proper. Accordingly, the undersigned recommends that this matter be remanded to the ALJ with the order that the ALJ's decision articulate a credibility finding that is "sufficiently specific to make clear the weight given the individual's statements and the reason for that weight."

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED, and the this action be REMANDED for a credibility determination.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge